No. 02-006

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 268N

IN RE THE MARRIAGE OF:

BETH LAUREN MORGENSTERN, n/k/a
BETH LAUREN MORGENSTERN-KOUBA,

Petitioner,

and

MARK GRAMS,

Respondent.

FILED

NOV 2 6 2002

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Stewart E. Stadler, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Mark Grams (pro se), Littleton, Colorado

For Respondent:

Gail H. Goheen, Attorney at Law, Hamilton, Montana

Submitted on Briefs: May 23, 2002

Decided: November 26, 2002

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2    Following our decision in *In re Marriage of Morgenstern* (*Morgenstern I*), 2001 MT 173N, 306 Mont. 535, *cert. denied*, 70 U.S.L.W. 3725 (U.S. May 28, 2002) (No. 01-9249), and remand to the District Court for the Eleventh Judicial District in Flathead County, the Petitioner, Beth Morgenstern-Kouba (Morgenstern) requested that the District Court amend its previous Qualified Domestic Relations Order (QDRO), to correct the payee name and make other minor adjustments to ensure that the appropriate party was responsible for tax liability accruing from the transfer of the retirement account. The District Court granted that request. The Respondent, Mark Grams, appeals from the District Court's Amended QDRO. Morgenstern requests sanctions and attorney fees be awarded against Grams. We affirm the District Court's amendment of the QDRO and award attorney fees to Morgenstern.

¶3    There are two issues presented on appeal:

¶4    1. Are the issues raised by Grams on appeal barred by principles of res judicata or waiver?

¶5    2. Is this an appropriate case for the imposition of sanctions pursuant to Rule 32, M.R.App.P.?

2

## FACTUAL AND PROCEDURAL BACKGROUND

¶6 The factual background of this divorce and child custody proceeding was set forth in *Morgenstern I*, ¶¶ 2-6.

¶7 Morgenstern and Grams dissolved their marriage in a California court on November 9, 1992. The court awarded joint custody of their two children. Physical custody was awarded to Morgenstern. The court ordered Grams to pay $1,222.00 per month for child support. At the time of the dissolution of the marriage, Grams resided in Colorado. Morgenstern resided in California, however, subsequently moved to Kalispell, Montana, in 1993.

¶8 On September 13, 1995, Morgenstern filed the California dissolution decree in the Eleventh Judicial District Court in Flathead County. During August 1997, Morgenstern learned that Grams had disappeared and was suspected of criminal activity related to funds missing from his former employer. Morgenstern then sought modification of the original parenting plan from the Flathead County District Court, and on November 5, 1997, obtained a Final Parenting Plan which suspended Grams' visitation and parental rights, continued his child support responsibilities as set by the California Superior Court, and required a monthly payment for medical insurance.

¶9 Sometime during the spring of 1999, Grams was arrested for alleged embezzlement of his employer's funds. On October 18, 1999, Grams filed a motion to modify the amount of his child support payments. The District Court set the issue for trial, and by the time of trial, Grams' past due support obligation was $38,959.74. After trial, on June 23, 2000, the

3

District Court entered Findings of Fact, Conclusions of Law, and an Order in which it found that Grams' circumstances had substantially changed and ordered that his monthly payments be reduced retroactive to November 1, 1999. The Order required that the support obligation be subject to annual review and recalculation upon the request of either party. The Order also established guidelines for Grams' reestablishment of a parental relationship. Finally, the Order directed that a QDRO be prepared by Morgenstern for delivery to Grams' employer to permit immediate distribution of his retirement plan to satisfy his unpaid support obligations. The QDRO was drafted on July 30, 2000, and served on Grams' former employer.

¶10 Grams and Morgenstern appealed the District Court's decision. That appeal was decided in *Morgenstern I.* In that appeal Grams raised numerous arguments but did not challenge the validity of the QDRO or the District Court's authority to issue the QDRO. We affirmed the decision, including the District Court's award of attorney fees to Morgenstern, and remanded for a determination of attorney fees and costs incurred because of the appeal. *Morgenstern I,* ¶¶ 22-23.

¶11 Since our opinion in *Morgenstern I,* Morgenstern attempted to obtain Grams' retirement funds, but was informed by the retirement plan administrator that the QDRO had a technical flaw that needed correction. The administrator recognized from the language of the original order that Grams was supposed to be responsible for all tax liability as a result of the transfer, but the administrator informed Morgenstern that in order to make sure the transfer properly designated the tax liability, that the QDRO should be amended to designate

4

her children as "alternate payees," rather than Morgenstern in her custodial capacity.

¶12 On October 19, 2001, Morgenstern sent a letter to Judge Stadler with a copy to Grams, in which she requested that the District Court amend the QDRO to reflect the necessary change in designation of the payee. On October 25, 2001, the District Court entered an amended QDRO reflecting the requested tax changes. On October 31, 2001, the administrator of Grams' retirement plan issued payments of $17,166.33 and $17,166.34 to Joel Morgenstern and Jamie Morgenstern-Grams, respectively. Grams now appeals the District Court's amendments to the QDRO.

## STANDARD OF REVIEW

¶13 The District Court's amendments to the QDRO were technical changes in the form of an order to facilitate collection of child support. We will apply the same standard of review that we would apply to an order which modified child support. We review a court's decision to modify child support to determine whether the court abused its discretion. *In re Marriage of Kovash* (1995), 270 Mont. 517, 521, 893 P.2d 860, 863.

## ISSUE 1

¶14 Are the issues raised by Grams on appeal barred by principles of res judicata or waiver?

¶15 Grams raises four broad issues in this appeal from the Amended QDRO. First, Grams contends that the Amended QDRO violates the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 through 1461. His general argument is that Colorado state law, (where Grams' retirement account is located) exempts or otherwise protects retirement

5

accounts from QDROs. Grams' second contention is that the Amended QDRO violates Montana law because it fails to distribute the retirement funds in satisfaction of the principal obligation owed, as opposed to the principal and interest. In addition, Grams contends that because the Montana Child Support Enforcement Division does not charge interest, equal protection prohibits the District Court from doing so. Third, Grams contends that the Amended QDRO violated his right to due process because his retirement funds were seized before the opportunity for a hearing. Finally, Grams claims that the Amended QDRO violates Montana common law because it orders that payments be made directly to their children instead of Morgenstern.

¶16   Morgenstern contends that Grams' arguments are either barred by principles of res judicata because they were either raised or could have been raised prior to the first appeal or that this issue was waived because it was not raised in the District Court prior to this appeal.

¶17   "A claim is res judicata when four criteria are met: the parties or their privies are the same; the subject matter of the claim is the same; the issues are the same and relate to the same subject matter; and the capacities of the persons are the same in reference to the subject matter and the issues." *Bragg v. McLaughlin*, 1999 MT 320, ¶ 16, 297 Mont. 282, ¶ 16, 993 P.2d 662, ¶ 16 (citing *Loney v. Milodragovich, Dale & Dye, P.C.* (1995), 273 Mont. 506, 511, 905 P.2d 158, 161). "The most important of the four criteria for res judicata is the identity of the issues." *Bragg*, ¶ 16 (citing *Marriage of Blair* (1995), 271 Mont. 196, 203, 894 P.2d 958, 963). Principles of res judicata procedurally bar a party from raising issues

6

that were or could have been raised on direct appeal. *Gollehon v. State*, 1999 MT 210, ¶ 51, 296 Mont. 6, ¶ 51, 986 P.2d 395, ¶ 51.

¶18    Grams previously raised his first two arguments, the ERISA and Colorado state law issue and the payment of principal versus interest issue, before the District Court prior to entry of the original.  The District Court disregarded Grams' arguments and issued the original QDRO.  Grams appealed the District Court's findings of fact and conclusions of law, but did not raise the ERISA and Colorado state law issues in *Morgenstern I*.  Grams now presents arguments  that he could have raised in his previous appeal.  We hold that these issues are barred by principles of res judicata and cannot now be considered.

¶19    Grams' third contention that his retirement funds were seized without due process of law is not barred by principles of res judicata, but is raised for the first time on appeal and would normally be waived.  However, because of the unusual procedural posture of the case and to save the parties further time and expense we also note that it is without merit.  First, Grams' assertion that Morgenstern received the check prior to the date of the Amended QDRO is not supported by any substantial evidence.  Copies of the check and disbursement records to the extent they can even be considered part of the record, note the disbursement date as October 30 or 31, 2001, several days after the October 25, 2001, Amended QDRO. In addition, we conclude that Grams received sufficient due process prior to the taking. "Although the phrase 'due process' cannot be precisely defined, the phrase expresses the requirements of 'fundamental fairness.'" *In re A.F.-C.*, 2001 MT 283, ¶ 50, 307 Mont. 358, ¶ 50, 37 P.3d 724, ¶ 50, (citing *Lassiter v. Department of Social Services* (1981), 452 U.S.

7

18, 24-25, 101 S.Ct. 2153, 2158, 68 L.Ed.2d 640, 648). Fundamental fairness requires fair procedures. *In re A.N.*, 2000 MT 35, ¶ 24, 298 Mont. 237, ¶ 24, 995 P.2d 427, ¶ 24; *A.F.-C.*, ¶ 50. Grams had ample opportunity to oppose Morgenstern's attempts to capture his retirement funds and the District Court record reflects that he has done so vigorously. The District Court's conclusions were reviewed and affirmed by this Court. We are satisfied that Grams had a fair opportunity to protect his property from seizure. The changes made in the Amended QDRO did not affect any new property interests that Grams did not have a prior opportunity to protect. The Amended QDRO and prior QDRO both took all of Grams' retirement account and imposed all of the tax liabilities from the intended transfer to Grams.

¶20 Finally, Grams' claim that child support payments made directly from his retirement plan to his children will not satisfy his child support obligation based on our decision in *State of Or. ex rel. Worden v. Drinkwalter* (1985), 216 Mont. 9, 700 P.2d 150, is also raised for the first time on appeal. Furthermore, while *Drinkwalter* is not directly on point we are unable to reconcile the District Court's amended QDRO with the District Court's support order because this issue was not brought to the District Court's attention and it did not have the opportunity to do so in the first instance. Therefore, we deem this issue waived for purposes of appeal.

ISSUE 2

¶21 Is this an appropriate case for the imposition of sanctions pursuant to Rule 32, M.R.App.P.?

8

¶22 When an appeal is taken without substantial or reasonable grounds, sanctions may be appropriate. Rule 32, M.R.App.P.; *Searight v. Cimino* (1989), 238 Mont. 218, 223, 777 P.2d 335, 337-38. While this Court will accommodate pro se litigants, when possible, we need not do so, especially when the litigant is "no stranger to litigation." *Huffine v. Boylan* (1989), 239 Mont. 515, 517, 782 P.2d 77, 78.

¶23 We conclude that Grams' appeal is without merit and that it is appropriate to award reasonable attorney fees to Morgenstern. Grams, while pro se, is "no stranger to litigation" in this case, and has multiplied the proceedings beyond what the issues in this case require.

¶24 The District Court's Amended QDRO is affirmed and this case is remanded to the District Court for a determination of Morgenstern's reasonable attorney fees and costs incurred on appeal and entry of judgment for that amount.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

9